## WERTZ v. SOUTHERN RY.

RAILROADS—CIRCUMSTANTIAL EVIDENCE.—REFUSAL OF NEW TRIAL sustained here, on ground on which trial Judge placed it, there was sufficient circumstantial evidence from which jury could have inferred that the .predecessor of the Southern Railway contracted with the owner of a ferry across Saluda River to maintain a bridge across the river at that point for the crossing of men, animals and vehicles, in connection with its railroad bridge, located on the ferry site, and defendant held liable for damages to horse and driver, caused by horse falling into hole in bridge.

Rule as to effect of circumstantial evidence stated.

Before MEMMINGER, J., Newberry, November, 1905. Affirmed.

Action by Jonathan H. Wertz and Lee H. Wertz against Southern Ry. Co. From judgment for plaintiffs, defendant appeals.

*Mr. T. P. Cothran,* for appellant, cites: *Contract by Railway Co. to maintain a public bridge without compensation is ultra vires:* 50 At. R., 829; Elliott on R. R., 23. *If built as a gratuity, the Co. is under no obligation to repair it:* 14 Wend., 61; 23 Wend., 446; 34 S. E., 986; 80 N. W., 787; 36 At., 202; 50 At., 829; Elliott on R., 22; 101 Mass., 193; 88 N. C., 129; 17 N. W. R., 972; 16 S. C., 567; 43 S. C., 221; 54 S. C., 98; 58 S. C., 359; 65 S. C., 251; 67 S. C., 196.

*Messrs. Caldwell* and *Park* and *Hunt, Hunt & Hunter,* contra, cite: *Presumptions are proof:* 2 Bay., .139: *The duty of keeping up the bridge is imposed for the appropriation of part of the highway:* 7 Ency., 991, 34 S. E., 986; 59 Wis., 69: *Repairing bridge shows knowledge of defendant of duty to repair:* 126 Mass., 374; 16 L. R. A., 593.

March 25, 1907. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for damages, alleged to have been sustained by the negligence of the defendant, while crossing the bridge hereinafter described.

The complaint contains the following allegations:

"That defendant's railroad crosses Saluda River at a place, where there now is, and has been for more than fifty years, a public highway, running to the river bank in the county of Newberry on one side, and in Greenwood county on the other side. That the plaintiffs are informed and believe that about the year 1850, when the said line of railroad was built by the Greenville and Columbia Railroad Company, that corporation, by contract with one or more of the owners of property adjacent to the crossing point, on Saluda River above mentioned, and to supply the place of the ferry, long in use at that point, as well as to secure a proper crossing for railroad trains, constructed one bridge, for the two purposes of enabling that railroad company to run its trains across the said river, and also of enabling persons, animals and vehicles to cross the said river—that bridge being a single structure resting on the same piers, sills and sleepers and under the same roof.

"That under this contract, the G. & C. R. R. Co. obligated itself to keep the bridge in safe and proper condition. That the defendant, after it acquired the ownership of the line of railroad formerly owned and operated by the Greenville and Columbia Railroad Company, continued to recognize the right of the travelling public to use the bridge for the purpose of crossing the river, and recognized its own duty to keep in safe condition the portion of the bridge allotted as aforesaid to the passage of men, animals, and vehicles.

"That after the defendant became the owner of the line of railroad, including the bridge above described, to wit: In the year 1902 the defendant, for reasons not necessary to recite, decided to separate the two lines and means of travel across the said bridge, and constructed a new crossing on the said river, at the said point, for all persons and

things travelling otherwise than on railroad trains, and by extending and increasing the supports for the floor of such separate ways of travel, and by laying a floor and providing railings to protect travelers, substituted a new bridge for the crossing of persons and things that way, and removed the way previously used for that purpose.

"That this new bridge was built by the defendant, as its own property, at its own expense, and was in every way a substitute for the old one.

"That neither of the counties, through which said highway ran, ever owned or controlled the bridge, or were obligated in any manner, to keep it in repair, except as to the approaches to the bridge."

The complaint then states the manner in which the plaintiff was injured.

The defendant answered the complaint denying generally its allegations, except the formal portions thereof.

At the close of the plaintiff's testimony, the defendant made a motion for nonsuit, on the following grounds:

"There is no evidence tending to show, there was any contract or understanding, express or implied, on the part of the defendant, which obligated it to keep in repair the wagon passage way of the bridge in question.

"The further ground is that we were entitled to notice if we have assumed the obligation to keep that bridge in repair."

This motion was refused.

The jury rendered a verdict in favor of the plaintiff for $450.00.

The defendant made a motion for a new trial on the following grounds:

"1. There is absolutely no testimony of any contract between the Greenville and Columbia Railroad Company, and any person whomsoever, which would bind it to maintain a bridge at the point in question.

"2. The plaintiffs' testimony showed that the defendant Southern Railway Company, did not acquire the railroad

until July 10, 1894, and therefore, could have had nothing to do with the old bridge, which was torn down, in 1892.

"3. It was shown by the plaintiffs that the new bridge was built by the Richmond and Danville Railroad Company in 1892, two years before the defendant acquired the railroad.

"4. It was not shown that the defendant Southern Railway Company, from 1894 to May, 1903, ever placed a plank or drove a nail upon the wagon part of the bridge, or recognized in any way an obligation on its part to maintain the bridge, or that it had any knowledge of a contract by its predecessors to do so, if such contract existed.

"5. The testimony was full to the effect that both Greenwood and Newberry counties had assumed jurisdiction of the bridge, and recognized their respective obligations to repair, to the center of the bridge, by continually making repairs upon it.

"6. That the plaintiffs have failed to adduce any testimony tending to establish the material allegations of the complaint.

"7. The presumption is that a bridge which is a part of a highway, in use by the public, should be kept in repair by the county authorities, and that duty cannot be imposed upon another, unless it appear that such other is under a legal obligation to do so; that the burden of so doing is upon plaintiffs in which they have failed.

"8. Granting for the sake of argument that a contract between the Greenville & Columbia Railroad Company and Dyson had been established, as alleged in the complaint, it would not be binding upon the defendant Southern Railway Company, unless the plaintiffs had made it appear that the Southern Railway Company had had knowledge of that contract, and assumed as a personal covenant the obligations under it, of which there is no evidence.

"9. Granting for the sake of argument that a contract with the Richmond & Danville Railroad Company and the county of Newberry had been established, to the effect that the Richmond and Danville would maintain and repair the

bridge in question, such contract would not be binding upon the defendant Southern Railway Company, unless the plaintiffs had made it appear that the Southern Railway Company had had knowledge of that contract, and assumed as a personal covenant, the obligations under it, of which there is no evidence.

"10. The Railroad Company can obligate itself to maintain a bridge which is to be used by the public as a part of the public highway where, by reason of its occupancy of a part of the highway, the railroad company for some consideration or advantage to itself thereby, builds a bridge, made necessary by such occupancy, and allows the public to use it as a part of the highway. The plaintiffs are not entitled to recover upon this ground, because they have not alleged it in their complaint, and upon the further ground, that there is no evidence tending to establish such state of facts."

The following are the reasons assigned by his Honor, the presiding Judge, in refusing the motion :

"This action was for damages to Mrs. Wertz and her horse, caused by the horse stumbling through a hole in a bridge across Saluda River, attached to and a part of the Southern Railway Bridge there. In support of the allegations of the complaint, that there was a contract between the predecessors of the Southern Railway, which had descended to it, to keep this bridge in repair, the testimony was circumstantial, and as to facts wherefrom the jury manifestly concluded that the old Greenville and Columbia Railroad, which originally built the bridge in the place of Dyson Ferry, did contract to maintain the bridge, as alleged in the complaint, and that the Richmond & Danville Railroad, which built the bridge over, in 1892, and the Southern Railway, which acquired the property from them in 1894, recognized and adopted said contract also.

"The jury had before them the testimony from which they found for such a contract as alleged in the complaint, there being before them the basic fact that the bridge was, and is, actually a part of the Southern Railway's structure

there across the river.    They were fully charged as to the
presumption that all public bridges used by the public are
presumed to be under the care and control of the county au-
thorities, and that in order for plaintiffs to recover against
the defendant, it must be shown that the defendant, and not
the county, was bound to keep the bridge in repair.

"The evidence upon these points, as before stated, was
circumstantial, but it seems to me the jury had a right under
our law to pass upon these questions.    As to the amount
of damages, the question was fairly placed before the jury
and they placed it at a figure which seemed to them proper
from the testimony and I do not see that I would be war-
ranted in interfering in that particular here.

"If there is any error in the case it is upon the question
of proof of the contract alleged in the complaint as neces-
sary to overcome the presumption as to the responsibility of
the county for the condition of the bridge; and I confess
to having had some misgivings upon this point, especially
after reading the powerful argument of defendant's attor-
ney, submitted upon this motion for new trial.    However,
after carefully considering the matter, I am not satisfied
that a new trial should be granted.    I am perfectly satis-
fied from the testimony that there was such a contract be-
tween Dyson and the Greenville & Columbia Railroad, and
that such contract was known, recognized and acted upon
by the Richmond and Danville Railroad in rebuilding the
bridge just before the Southern Railway acquired the prop-
erty; and it appearing that the Southern Railway succeeded
to the Richmond & Danville with this bridge annexed to its
railroad bridge and used by the public as a part of the high-
way, it assumed the duty to maintain that bridge for men
and vehicles as much as it did its bridge for engines and
cars.    The jury have grounds for the facts as alleged in the
complaint, from the facts and circumstances put in evidence,
and I think the verdict should stand.

"There was evidence in the case to show that the county
authorities of Newberry and Greenwood counties did, from

time to time, put repairs on this bridge, but even if that be so, that would not be sufficient to relieve the defendant from its duty to repair the bridge if legally bound to do so as the jury found it was."

The appellant's exceptions assign error in the refusal to grant the motions for nonsuit and new trial.

The only question is whether there was any testimony tending to sustain the material allegations of the complaint.

The evidence is circumstantial but this Court is satisfied, for the reasons stated by the presiding Judge, that when considered in its entirety, it tended to prove the allegations of the complaint.

It was well said by Waties, J., in *Forest* v. *Brown*, 2 Bay, 133, 139, that "one of the highest modes of proof is, to show the existence of circumstances which could not have existed, if the fact to be proved had not pre-existed. And what is this kind of proof but presumption? *A single circumstance may have little strength, and of itself afford no foundation; but when joined to many of the same nature, all fitting each other, and having the same relation, the whole united, may form an arch strong enough to support a presumption of the most important fact.*" (Italics ours.)

The rule is thus stated in *Railroad* v. *Partlow*, 14 Rich., 237, 244: "It may be that no one of the facts would of itself warrant the inference, and yet, when taken together, they may produce belief, which is the object of all evidence. * * * This is usually the case, where an issue depends on circumstantial evidence."

In Greenl. Ev. sec. 51 *a*, it is said: "It is not necessary that the evidence should bear *directly* upon the issue. It is admissible if it tends to prove the issue, or constitutes a link in the chain of proof; although, alone, it might not justify a verdict in accordance with it." This language is quoted with approval in the case of *Dantzler* v. *Dantzler*, 75 S. C., 334.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.